**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOHN MICHAEL HEAD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   Case No. CIV-07-402-F |
| | ) |
| PETER D. KEISLER,[1] et al., | ) |
| | ) |
| Respondents. | ) |

**REPORT AND RECOMMENDATION**

Petitioner, an alien appearing pro se, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, challenging his continued post-removal order detention by Immigration Customs Enforcement ("ICE") of the Department of Homeland Security.[2] The matter has been referred to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. Respondents have filed a response to the petition[3] and Petitioner has filed a reply to the response. For the following reasons, it is recommended that the petition be denied.

Background

---

[1] On September 17, 2007, Peter D. Keisler became the Acting Attorney General. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Keisler is substituted for Alberto R. Gonzales as a respondent in this action.

[2] Effective March 1, 2003, the custodial functions previously performed by the Immigration and Naturalization Service ("INS") were transferred to the Department of Homeland Security. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1224 n.3 (10th Cir. 2004). Within the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") is charged with INS's detention and removal functions. Where necessary, the undersigned refers to ICE, unless citing to materials which refer to the INS.

[3] Respondents' response/motion with supporting documents attached has been construed by the Court as an answer in accordance with Rule 5 of the Rules Governing Section 2254 Cases. *See* Rule 1(b), Rules Governing Section 2254 Cases (rules may be applied to other habeas cases in court's discretion).

Petitioner, a native and citizen of Brazil, entered the United States in 1981 and became a lawful permanent resident in 1982. Response, Ex. 9. In 2003, Petitioner was convicted in the Oklahoma County District Court of causing an accident involving great bodily injury while under the influence of alcohol and as a result, Petitioner's previously imposed suspended sentences for two counts of second degree burglary and two counts of concealing stolen property were accelerated and further suspended sentences were imposed. Response, Exs. 1 and 3. On August 7, 2006, ICE authorities arrested Petitioner upon his release from the custody of the Oklahoma Department of Corrections and placed Petitioner in removal proceedings, charging him as an alien subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) for the commission of an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(G), and for the commission of crimes involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(II). Response, Ex. 5. On October 6, 2006, an immigration judge ordered Petitioner removed from the United States to Brazil on the charges contained in the Notice to Appear. Response, Ex. 6. Petitioner waived appeal of that order, and it became administratively final on that date. *Id.*, and Petition at 3. *See also* 8 C.F.R. § 3.39; 8 C.F.R. §§ 240.14 and 241.1(b). Petitioner states that following a review of his custody status on January 6, 2007, he was served with a written decision ordering his continued detention. Petition at 5. As further discussed *infra*, the record reflects that Petitioner's custody status was again reviewed in February 2007, and that since that time, immigration officials have been working with Brazilian governmental officials to secure travel documents to expedite Petitioner's removal.

In his habeas petition filed on April 5, 2007, Petitioner claims that his detention has extended beyond the time ICE is statutorily authorized to detain him pending

removal and that his continued detention is contrary to the holding in *Zadvydas v. Davis*, 533 U.S. 678, 687-88, 699 (2001), and violates his Fifth Amendment right to substantive due process. Petition at 7. Petitioner requests that he be released on an order of supervised release subject to such conditions as ICE authorities deem appropriate. Petition at 15.

Respondents state that at the time he filed his § 2241 petition, Petitioner had been in ICE custody for exactly six months. However, Respondents contend that Petitioner is not entitled to habeas relief because he fails to demonstrate that there is no significant likelihood of his removal to Brazil in the reasonably foreseeable future. In support, Respondents contend that (1) there are no institutional barriers to Petitioner's removal and (2) progress is being made to secure a travel document to facilitate Petitioner's removal.

## DISCUSSION

I.  Jurisdiction

The general habeas corpus statute, 28 U.S.C. § 2241, provides the federal courts with the authority to grant a writ of habeas corpus to a person held "in violation of the Constitution or law and treaties of the United States." 28 U.S.C. § 2241(c)(3). The statute also grants federal courts jurisdiction to review the lawfulness and constitutionality of executive detention. The Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 687-88, 699 (2001). This Court has subject matter jurisdiction over the instant § 2241 petition because Petitioner was detained within its jurisdiction at the time he filed his petition and he

asserts that his detention is not statutorily authorized and violates his constitutional rights. *See Zadvydas*, 533 U.S. at 699. *See also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (finding district court properly exercised jurisdiction over alien's habeas petition challenging his continued detention without bond or a bond hearing);[4] *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas*, 533 U.S. at 687-88).

II. <u>Statutory Claim</u>

The detention of aliens subject to final orders of removal is governed by 8 U.S.C. § 1231. The statute authorizes a mandatory 90-day detention period following a final order of removal. 8 U.S.C. § 1231(a)(1)(A), (a)(2).[5] If an alien is not deported during the 90-day removal period, certain classes of aliens, including inadmissable aliens and criminal aliens, may continue to be subject to detention if they have not yet been removed, 8 U.S.C. § 1231(a)(6),[6] or the alien may be released under continued supervision, 8 U.S.C. § 1231(a)(3).

---

[4]The undersigned notes that although the Real ID Act of 2005 ("RIDA"), effective May 11, 2005, "eliminate[d] a district court's jurisdiction over habeas petitions challenging final orders of removal . . . the [RIDA] did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention." *Ferry*, 457 F.3d at 1131 (citation omitted). Thus, because Petitioner challenges his continued detention, rather the validity of his removal order, the Court is fully empowered to consider his claim.

[5]The removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
8 U.S.C. § 1231(a)(1)(B).

[6] Specifically, § 1231(a)(6) states the following:
An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

In *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001), the United States Supreme Court recognized the "obvious" and "serious" constitutional problem which would arise out of a statute that "permit[ted] an indefinite, perhaps permanent, deprivation of human liberty without . . . protection." To avoid a constitutional infirmity, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Court held that six months is a "presumptively reasonable period of detention" in which to bring about an alien's removal. *Id.* at 700-01. The Court further held that,

> [a]fter this 6-month period, **once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future**, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701 (emphasis added). Petitioner recognizes that before the burden shifts to Respondents, he must demonstrate the existence of either institutional barriers to repatriation to Brazil or particular barriers to his removal such that there is no significant likelihood of removal in the reasonably foreseeable future. Petition at 13 (citing *Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1366 (N.D. Ga. 2002)). *See also Khan v. Fasano*, 194 F. Supp.2d 1134, 1136-37 (S.D. Cal. 2001) (where alien had been in post-removal order custody for ten months, and meeting was scheduled with destination country to discuss request for travel documents, delay alone is not sufficient to meet alien's burden). To carry his burden, an alien subject to an order of removal must present something beyond "speculation and conjecture." *Idowu v. Ridge*, No. 3:03-CV-1293-R, 2003 WL 21805198,

at *4 (N.D. Tex. Aug. 4, 2003) (unpublished decision).

Petitioner has not made nor can he make the necessary showings to be entitled to relief under *Zadvydas*. Petitioner's removal period began on October 6, 2006, when his order of removal became final, *see* 8 U.S.C. § 1231(a)(1)(B)(i), and the instant habeas petition was filed on April 5, 2007. *See Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1123 (10th Cir. 2005) ("The presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months.") (citing *Zadvydas*, 533 U.S. at 701). Even assuming the six-month period had elapsed at the time Petitioner's petition was filed, the undersigned finds that Petitioner has failed to meet the second part of the *Zadvydas* test, that is, he has not alleged sufficient evidence to establish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. " *Zadvydas*, 533 U.S. at 701.

First, Petitioner neither challenges the designation of Brazil as his destination nor Respondents' assertion that there are no institutional or political impediments to Petitioner's removal to Brazil. In fact, according to an affidavit submitted by Heath Simon, an ICE detention and deportation officer of the ICE Headquarters Office of Detention and Removal Operations in Washington, D.C., "ICE has been successful in repatriating Brazilian citizens who are subject to final orders of deportation or removal." Response, Ex. 10 (5,646 in 2005 and approximately 2,985 in 2006).

Second, Petitioner has failed to demonstrate that there are any barriers unique to his circumstances that hinder his return to Brazil. For example, Petitioner does not dispute that Brazil is his country of birth and citizenship. Nor does he argue that the government of Brazil has rejected immigration officials' attempt to obtain travel

documents. Although Petitioner alleges that a deportation officer informed him in January 2007 that "it was not likely at all that Petitioner would be deported," he fails to offer any evidence in support of this assertion. Petitioner's Response [Doc. No. 13]. Likewise, Petitioner alleges without supporting evidence that on August 20, 2007, he was informed by deportation officer Juan G. Garcia at the local ICE office that Brazil "is not issuing" his travel documents. Petitioner's "Additional Information" [Doc. No. 18]. However, Petitioner has wholly failed to support his conclusory assertions that the "foreseeable future window has closed," that it is now no longer reasonable to continue his continued detention, and that he should be released on an order of supervision. Petitioner's letter dated September 12, 2007 [Doc. No. 19].

In essence, with respect to meeting his initial burden on the second *Zadvydas* prong, all that Petitioner has shown as evidence that there is no significant likelihood of his removal in the reasonably foreseeable future, is a delay in the issuance of the necessary travel documents. But a mere delay does not trigger the inference that an alien will not be removed in the reasonably foreseeable future because "the reasonableness of detentions pending deportation cannot be divorced from the reality of the bureaucratic delays that almost always attend such removals." *See Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1366 (N.D. Ga. 2002). Under these circumstances, the undersigned finds that Petitioner has failed to sustain his burden to make a showing of the unlikelihood of removal under *Zadvydas. See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (finding "the magistrate judge was also correct in dismissing Akinwale's § 2241 petition because it had failed to 'present any facts indicating that the INS is incapable of executing his removal to Nigeria and that his detention will, therefore, be of an indefinite

nature.'").

Moreover, even if Petitioner's assertion were sufficient to meet his initial burden under *Zadvydas*, Respondents have produced sufficient evidence to rebut such showing. In response to Petitioner's assertion regarding a delay in the issuance of his travel documents, the response demonstrates that a travel document was initially requested on October 6, 2006, after which Alba Alves, an official at the Brazilian Consulate ("Consulate") in Houston, Texas, interviewed Petitioner on October 31 and stated that an investigation of his family history and background would be conducted. Response, Ex. 7. According to Ms. Alves, such investigation would be "lengthy and time consuming." *Id.* On January 9, 2007, ICE officials sent to the Consulate a second request for issuance of a travel document and attached copies of Petitioner's Brazilian birth certificate and other background documents. Response, Ex. 8.

On February 21, 2007, Petitioner was served a "Decision to Continue Detention" informing him that ICE officials had reviewed his custody status and had decided that his detention pending removal should be continued. Response, Ex. 9. Petitioner was informed that the decision was based on a review of "[his file and/or [his] personal interview and consideration of any information [he] submitted to the ICE reviewing officials." *Id.* It was noted that no travel document had yet been issued because the Embassy of Brazil was still "conducting an investigation as to [Petitioner's] citizenship," and further, "there is no indication at this time that a certificate will not be issued for [Petitioner's] repatriation." *Id.* Additionally, Petitioner was informed that he was "considered a flight risk," and he would therefore remain in custody pending his removal

from the United States. *Id.*[7]

The response also reflects that telephone calls were made by ICE employee Joseph Ballard to the Brazilian Consulate March 22, 2007, and April 3, 2007, regarding the status of the travel document request for Petitioner. Response, Ex. 7. Although a consular official responded that Petitioner's case would be checked, ICE officials received no follow up contact. Response, Ex. 7. During a telephone call on April 10, 2007, an ICE employee was told by a consular official that the Consulate "was willing to issue a travel document for [Petitioner]" but that information had been received "concerning an appeal in his immigration case." *Id.* In response, ICE advised the consular official that there was "nothing pending in [Petitioner's] immigration case." *Id.*

In subsequent communication on May 7, 2007, the Consulate advised ICE officials that a decision regarding Petitioner's pending travel documents was being withheld until "all court proceedings were concluded," indicating that Petitioner's pending habeas action could have an effect on his removal order. Response, Ex. 10, ¶ 5. ICE advised the Consulate that Petitioner's current habeas petition "only challenged his detention; the removal order remained in effect." *Id.* In response, ICE was informed that a decision regarding a travel document "would be made in the near future." *Id.* On May 11 and May 17, 2007, further attempts to contact the Consulate were unsuccessful. *Id.*, ¶ 6. On May 25, 2007, the Consulate informed ICE officials that Petitioner's family "may be filing some type of appeal on his behalf," that the issuance of a travel document would be postponed until the Consulate received notification "whether an appeal was actually

---

[7]Petitioner was further informed that if he had not been released or removed from the United States by April 6, 2007, his case would be transferred to the Headquarters Post Order Unit (HQPDU) in Washington, D.C. for a final determination regarding his continued custody. Response, Ex. 9.

filed" and that a travel document would be issued "once this matter has been resolved." *Id.*, ¶¶ 6 and 7.

At this juncture, there is no evidence that the Brazilian authorities refuse accepting immigration detainees of Brazilian origin or refuse accepting Petitioner personally. Thus, Petitioner is not in the "same removable-but-unremovable limbo as the aliens in *Zadvydas v. Davis* . . . ." *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 347 (2005).[8] Therefore, the undersigned finds that the evidence submitted by Respondents shows that the possibility that Brazil will issue Petitioner a travel document in the reasonable foreseeable future is not foreclosed. *See Fahim*, 227 F.Supp.2d at 1366 (even if alien had been detained in excess of six-month time period, mere fact that Egyptian government has taken its time in responding to immigration officials' request for travel documents does not mean that it will not do so in the future); *Khan*, 194 F.Supp.2d at 1136-37 (where alien had been in post-removal order custody for ten months, and meeting was scheduled with destination country to discuss request for travel documents, delay alone was not sufficient to meet alien's burden); *Stewart v. Ashcroft*, No. 02 C 4815, 2002 WL 31133105, at *1 (N.D. Ill. July 17, 2002) (unpublished decision) (petitioner failed to state a claim under *Zadvydas* where no factual support was provided for the legal conclusion that there was no reasonable likelihood of his removal in the foreseeable future); *Lewis v. U.S. Dep't of Justice*, No. Civ.A. 02-1190, 2002 WL 1492143, at *2 (E.D. La. July 11, 2002) (unpublished decision) (finding petitioner's

---

[8]Petitioner's situation appears different to that of Kim Ho Ma and Kestutis Zadvydas, the aliens whose cases were considered in *Zadvydas*. Ma was from Cambodia, a country with which the United States has no repatriation agreement. As a result there was virtually no hope of repatriating Ma back to his native land. *Zadvydas*, 533 U.S. at 686. Likewise Zadvydas, having been born in a refugee camp, was literally a man without a country and, therefore, was an individual whom no other nation would ever accept, no matter the efforts of immigration officials. *Zadvydas*, 533 U.S. at 684.

removal to Guyana "reasonably foreseeable" based on issuance of Emergency Certificate for travel and declaration of INS officer stating INS' intention to effectuate petitioner's removal).[9]

Thus, the undersigned finds that although Petitioner has shown a delay in the issuance of his travel documents, he has not shown good reason to believe that there is no significant likelihood that he will be removed to Brazil in the reasonably foreseeable future.[10] Moreover, Respondents have shown that Petitioner's removal is still reasonably foreseeable, and therefore, ICE authorities have not exceeded the statutory authority to continue to detain Petitioner. *Zadvydas*, 533 U.S. at 699, 701.[11]

### III.   Substantive Due Process Claim

Petitioner alleges that his continued detention violates his Fifth Amendment right

---

[9] The undersigned finds that the cases cited by Petitioner in support of his claim that he is entitled to relief under *Zadvydas* are distinguishable for the reasons set forth above, *i.e.*, Petitioner had been in ICE post-removal order custody a short period of time (six months) when he filed his petition, his native country of Brazil has not refused to accept his return, and Brazilian officials have stated that travel documents will issue upon resolution of any court proceedings challenging Petitioner's removal. *Compare Habtegaber v. Jenifer*, 256 F.Supp.2d 692, 697 (E.D. Mich.2003) (finding alien's removal in reasonable foreseeable future not significantly likely where no country would accept the detainee); *Shefqet v. Ashcroft*, No. 02-C7737, 2003 WL 1964290, *3 (N.D. Ill. April 28, 2003) (finding alien entitled to relief under *Zadvydas* where he had been in ICE custody for over one year at the time the petition was filed and his country of origin refused to issue a travel document for the detainee); *Okwilagwe v. INS*, No. 3-01-CV-1416-BD, 2002 WL 356758, *2-3 (N.D.Tex. Mar. 1, 2002) (alien detained for eleven months after INS represented that it would have travel documents in a few days); *Lewis v. INS*, Case No. 00CV0758(SJ), 2002 WL 1150158 (E.D.N.Y. May 7, 2002) (finding that if INS could not remove alien who had been detained for 23 months within 30 days, alien would be released).

[10] Respondents have not explained whether or what type of "appeal" may have recently been filed on Petitioner's behalf in the immigration court, and Petitioner has not addressed the issue. To the extent Petitioner may be pursuing further judicial review and/or a stay of his removal order, he may be triggering a date that begins the removal period anew. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). In such case, "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003).

[11] The undersign notes that the Tenth Circuit has recognized that where "circumstances may ultimately change in [a petitioner's] situation involving ICE's ability to effectuate deportation, a petitioner's habeas petition should be denied "without prejudicing [his] ability to file a new § 2241 petition in the future.'" *Soberanes*, 385 F.3d at 1311 (quoting *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (10th Cir. 2002)).

to substantive due process by depriving him of his liberty interest in freedom from bodily restraint. Petition at 7. The response does not address Petitioner's due process claim.

As discussed previously, Petitioner has not demonstrated that his post-removal order detention has exceeded ICE's statutory authority to detain him. Without establishing such a violation, Petitioner cannot bring a substantive due process claim based upon his continued detention. *See Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("pursuant to *Zadvydas*, [the petitioner's] due process rights are not jeopardized by his continued detention so long as his removal remains reasonably foreseeable"); *Andrade v. Gonzales*, 459 F.3d 538, 543-44 (5th Cir. 2006) (rejecting an alien's constitutional claim based on his failure to show that removal was unlikely), *cert. denied*, 127 S.Ct. 973 (2007); *Idowu v. Ridge*, No. 3-03-CV-1293-R, 2003 WL 21805198, at *5 (N.D. Tex. Aug. 4, 2003) (unpublished decision) (same). Petitioner's substantive due process claim fails.[12]

IV.     International Law

Although not raised as a separate claim in the petition, Petitioner refers to the American Convention on Human Rights and the Universal Declaration of Human Rights, alleging that these documents support "customary principles prohibiting prolonged arbitrary detention" and seemingly arguing that his indefinite detention violates each. Petition at 13. Although these allegations have not been addressed by Respondents, these

---

[12]To the extent Petitioner also alleges that ICE officials have "held him in detention without the right to an individualized P.R. bond" in violation of his due process rights, such claim is without merit. Petition at 10(b). The district court cases and statutory authority cited by Petitioner involve the detention of criminal aliens pending an administrative removal hearing. *Id.* (citing *Martinez v. Greene*, 28 F.Supp.2d 1275, 1279 (D.Colo. 1998) and INA § 236(c)). However, any due process claim based on Petitioner's pre-removal-order detention is moot because it is undisputed that Petitioner is currently being held pursuant to a final removal order, *i.e.*, pursuant to 8 U.S.C. § 1231(a). *See Samuel v. I.N.S.*, No. 01 CIV. 3413 LTSRLE, 2005 WL 120221, at *7 (S.D. N.Y. Jan. 20, 2005) (unpublished decision) ("Because Samuel now has a final order of removal, he no longer is being detained under the statute he seeks to have declared unconstitutional. 'The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.'") (discussing challenge of INA § 236(c), *i.e.*, 8 U.S.C. § 1226(c)).

documents do not provide a basis for habeas relief.

In *Chen v. Ashcroft*, No. 03-0278, 2004 WL 56365, at *4 (10th Cir. Jan., 13, 2004) (unpublished decision) the Tenth Circuit expressly held that neither of these treaties provide aliens, such as Petitioner, a basis for relief. The Court stated:

> The United States has not ratified the American Convention on Human Rights, opened for signature December 19, 1966, and, therefore, we are not bound by it. Similarly, the Universal Declaration of Human Rights is merely a resolution of the United Nations, and . . . is [not] binding on the United States or on this Court.

*Id.* (citations omitted). *See also Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003) (finding that the Universal Declaration of Human Rights was not binding on the United States and could not give rise to an environmental claim); *Garza v. Lappin*, 253 F.3d 918, 925 (7th Cir. 2001) (stating that because the United States has not ratified the American Convention on Human Rights, the "document does not yet qualify as one of the 'treaties' of [this country] that creates binding obligations").

Accordingly, the undersigned finds that to the extent Petitioner relies on these international treaties to support his claim that he is being illegally detained pending removal from the United States, such claim is without merit.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 12th day of November, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1(a). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Moore v.*

*United States,* 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the Magistrate Judge in this matter.

    ENTERED this 23rd day of October, 2007.

                                              */s/ Bana Roberts*
                                              BANA ROBERTS
                                              UNITED STATES MAGISTRATE JUDGE